Evelyn GRADY, Appellant,

v.

AMREP, INC., James J. Dwyer, Jr., Noel Dwyer and Dean Burns, Respondents.

No. ED 76176.

Missouri Court of Appeals, Eastern District, Division One.

April 27, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 7, 2004.

Application for Transfer Denied Aug. 24, 2004.

---

**3.** Both Rule 29.12(b) and Rule 30.20 provide authority for appellate review for plain error.

Evelyn Grady, St. Charles, pro se.

Riezman Berger, P.C., Randall D. Grady, Norbert Glassl, St. Louis, MO, for respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Evelyn Grady ("Plaintiff"), appeals from the judgment of the Circuit Court of the City of St. Louis granting summary judgment in favor of respondents, Amrep, Inc., James J. Dwyer, Noel Dwyer, and Dean Burns ("Defendants").[1] We affirm.

Plaintiff leased space on North Euclid Avenue in the City of St. Louis to operate a clothing store. She was exposed to Limo Sol, a turpentine-like chemical stripper, on June 3, 1989. Limo Sol, which is made by Amrep, was being applied to a tile floor in a space adjacent to her store. As a result of her exposure, she went to see Dr. Hiatt on June 9, 1989.

Plaintiff claimed one of the injuries resulting from her exposure was a sensitivity to certain chemicals. However, she also suffered numerous other maladies including, among numerous others, dizziness, nausea, hallucinations, kidney and lung infections, and depression.

On June 2, 1994, Plaintiff filed suit against Amrep for injuries caused by her exposure to Limo Sol. In a deposition taken April 15, 1995, Plaintiff testified that on June 3, 1989 she saw the product seeping into her store and could smell the vapors. She had an immediate reaction after her exposure to the product. On June 9, 1989, Dr. Hiatt said that she was having symptoms typical of persons who have been exposed to toxic chemicals. Plaintiff also stated that her continuing allergies to certain chemicals, depression, exhaustion, chemical sensitivity, intermittent joint pain, and swollen glands all began on the date of her exposure.

Plaintiff dismissed her June 2, 1994 suit without prejudice. The dismissal pleading has two circuit clerk file stamps on it: one dated December 14, 1995 and one dated January 22, 1996. The certificate of service states that a copy of the pleading was mailed to Defendants on December 13, 1995.

Plaintiff re-filed her action on January 21, 1997. She alleged essentially the same injuries as in her previous petition. However, she specifically asked for damages for injury and permanent loss of health.

Amrep argued the affirmative defense of the statute of limitations in its answer and filed a motion for summary judgment. Amrep argued the undisputed facts showed that the five-year statute of limitations began on June 3, 1989, when Plaintiff's injuries were sustained and when Plaintiff had ascertained the cause. Amrep also stated that, at the very latest, the statute of limitations commenced on June 9, 1989, when Dr. Hiatt told Plaintiff the cause of her symptoms. Further, Amrep argued Plaintiff's second action was not filed within one-year of her dismissal, as required by the savings statute.

Dean Burns filed a motion to dismiss the re-filed action, alleging it was prohibited by the statute of limitations. Burns also argued that the re-filed petition failed to state a claim upon which relief can be granted and he "incorporat[ed] into his motion to dismiss all documents filed by [Amrep and Dwyer] in their motions to dismiss and for summary judgment."

Plaintiff argued her cause of action did not accrue until April 6, 1995, when she was diagnosed with Chemical Sensitivities Syndrome. Therefore, her second action was within the five-year statute of limita-

---

1. On the court's own motion, with the parties' agreement, the appeal as to James J. Dwyer and Noel Dwyer has been dismissed as moot.

tions. In the alternative, Plaintiffs maintained her second action was filed within the one-year savings period after her dismissal.

The trial court found that the statute of limitations began to run on June 3, 1989, the day the damage to Plaintiff was ascertainable. Thus, the statute of limitations ran on June 3, 1994, and the second action, filed January 21, 1997, was not filed within the limitations period. The court also found that the second action was not filed within the one-year savings period because the original action was dismissed on December 14, 1995. As a result, the trial court granted Amrep's motion for summary judgment and Burns' motion to dismiss.

When reviewing a grant of summary judgment, we view the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). Our review is essentially *de novo*. *Id.* We will uphold the trial court's judgment if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 381. The moving party has the burden to show it has a right to judgment as a matter of law and that there is no genuine issue of material fact. *Id.* at 378.

In her first point on appeal, Plaintiff argues the trial court erred in granting summary judgment in favor of Defendants because there was a genuine issue of fact as to the date Plaintiff's damages were sustained and were capable of ascertainment.

▇▇▇ The statute of limitations for actions involving injury to a person is five years. Section 516.120.[2] Actions for injuries under this statute of limitations shall

be deemed to have accrued "when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained." Section 516.100. For the purposes of this statute, damages are capable of being ascertained when a plaintiff having a recognized theory of recovery sustains compensable damages. *Wallace v. Helbig*, 963 S.W.2d 360, 360 (Mo.App. E.D. 1998). Damages are ascertained when the fact of damage appears rather than when the extent or amount of damage occurs. *Kennedy v. Microsurgery and Brain Research*, 18 S.W.3d 39, 42 (Mo.App. E.D. 2000).

Our colleagues have held that damages were ascertainable at the moment a man was shot, even though the man only later discovered that he sustained permanent paralysis of certain nerves in his stomach, which compelled him to bring suit. *Newton v. BPS Guard Services, Inc.*, 833 S.W.2d 14, 16 (Mo.App. W.D.1992). As a result, this man's suit was barred by the statute of limitations, which began running when he was shot. *Id.*

Similarly, we held the statute of limitations barred a suit brought six years after a man was struck in the face with a steel bar. *Allison v. Missouri Power & Light Co.*, 59 S.W.2d 771, 773 (Mo.App.St.L.Dist. 1933). We found that although the complete extent and character of the disability was not immediately known when the man was struck, everything pleaded by the plaintiff in an attempt to avoid the statute of limitations was "after all but aggravating circumstances enhancing the legal injury already inflicted, and constituting mere developments of such injury, and

**2.** All statutory references are to RSMo 1994 unless otherwise indicated.

were not of a character to delay the accrual of the cause of action." *Id.*

Plaintiff argues that she had a sensitivity to certain chemicals after her exposure to Limo Sol, but she was not diagnosed with Chemical Sensitivities Syndrome until April 6, 1995. As a result, she argues her injury was not ascertainable until April 6, 1995. In support of this contention, Plaintiff argues her original petition only asked for damages for loss of earning capacity and loss of business while her re-filed petition asks for damages for injury and permanent loss of health. The re-filed petition also listed further injuries detailing the permanent damage to Plaintiff's health.

Plaintiff relies on *Reasons v. Union Pacific R.*, 886 S.W.2d 104 (Mo.App. E.D. 1994). In that case, which was filed under the Federal Employers' Liability Act ("FELA"), the plaintiff was exposed to "asbestos, strong odors from diesel engines, cleaning agents, chemicals, spray paint, dust particles, fumes and black smoke created by welding around motor grease and other engine oils" over the course of several years. *Id.* at 106. This exposure caused his chest to tighten, his eyes to water, his nose to run, his throat to ache, and his breathing to be difficult while he was at work, but as soon as he left his work place, he felt fine. *Id.* Eventually, plaintiff was diagnosed with occupational asthma as a result of his work environment. *Id.* at 107. We found that the plaintiff could bring his claim because the statute of limitations did not begin running until he was diagnosed. *Id.* at 109. The statute of limitations for claims under FELA begins when a claimant knows or has reason to know that he has been injured and knows or has reason to know the cause of his injury. *Id.* In *Reasons*, the plaintiff testified that he thought his symptoms were only temporary reactions and

were similar to symptoms anyone under those circumstances would experience. *Id.* at 109.

Plaintiff also relies on *Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434, 436 (Mo. banc 1984), which involved an occupational disease, asbestosis. In *Elmore*, the plaintiff worked with asbestos from 1943 to 1976, but he did not begin to experience shortness of breath until 1973. *Id.* at 435–36. In that case, the diagnosis of asbestosis triggered the statute of limitations because the character of the plaintiff's condition first came together with its cause upon diagnosis. *Id.*

In *Reasons*, the plaintiff "felt fine" when he was not at work. *Reasons*, 886 S.W.2d at 106. In this case, Plaintiff's condition seemed to improve at times, but some symptoms manifested later and she never completely recovered from the exposure. In *Reasons*, the plaintiff only speculated that his work environment was triggering his reaction. However, in this case, Plaintiff knew immediately that she was exposed to Limo Sol and that it caused her reactions.

■ In this case, Plaintiff's claim is distinguishable from the cases on which she relies. Unlike in *Elmore*, Plaintiff immediately experienced symptoms and knew what had caused them, the exposure to Limo Sol. Plaintiff also knew the way in which Limo Sol affected her, even though the full extent of its effect was not identified until later. Lastly, Plaintiff was injured after a brief exposure to Limo Sol, not after a prolonged exposure over a period of years.

Therefore, we find that the trial court did not err in granting summary judgment because Plaintiff's damages were ascertainable upon Plaintiff's initial exposure on June 3, 1989. Point denied.

Plaintiff states in her brief that "[the above] argument's reasoning is intended to extend to [the granting of Burns' motion to dismiss] as well." Having already affirmed the trial court's finding on this issue and these facts with respect to Amrep, we also affirm the trial court's dismissal of this claim as to Burns.

In her second point on appeal, Plaintiff argues the trial court erred in granting summary judgment in favor of Defendants because they failed to assert the specific statute of limitations relied on in their answers and motions.

■ A party asserting the statute of limitations defense must assert the specific section upon which it relies. *Johnson v. Vee Jay Cement*, 77 S.W.3d 84, 87 (Mo. App. E.D.2002). If a party does not assert a specific section, its motion is insufficient to raise the statute of limitations defense. *Id.*

In *Johnson*, Vee Jay Cement did not set forth a specific section in its answer, but it did argue the "claim was barred by the applicable statute of limitation." *Id.* Vee Jay Cement did, however, specifically set forth in its motion to dismiss several grounds on which it claimed Johnson's claim was time-barred. *Id.* We found this sufficient to raise the statute of limitations defense. *Id.*

■ Similarly, in this case, Amrep stated in its answer as to each of the four counts that "Plaintiff's claims are clearly barred by virtue of the Statute of Limitations." Then in its motion for summary judgment, Amrep argued with more specificity the reasons that Plaintiff's claims were barred by the statute of limitations. In the memorandum in support of its motion for summary judgment, Amrep cited the specific statutory sections of the statutes of limitations at issue in the context of its arguments that Plaintiff's claims were

time-barred. Approximately a month after Amrep filed its memorandum in support of its motion for summary judgment, Plaintiff filed a response in which she argued against Amrep's statute of limitations defense.

Amrep's motion for summary judgment was granted on April 21, 1998. On May 20, 1998, Plaintiff filed a motion to reconsider, which raised for the first time the argument that Amrep did not properly assert the statute of limitations defense in its answer or motion for summary judgment.

Based on Amrep's answer, motion for summary judgment, and its memorandum in support of its motion for summary judgment, we find that Amrep sufficiently raised the statute of limitations. Point denied.

In her third point on appeal, Plaintiff argues the trial court erred in granting summary judgment in favor of Defendants on the basis of the one-year savings statute because the voluntary dismissal document was facially contradictory and the corresponding docket entry supported the later date.

Section 516.230 provides: "[i]f any action shall have been commenced within the times ... prescribed in [section 516.120], and the plaintiff therein suffer a nonsuit ... such plaintiff may commence a new action ... within one year after such nonsuit."

■ A voluntary dismissal qualifies as a "nonsuit" as contemplated by section 516.230. *Gasper v. St. Charles County*, 857 S.W.2d 370, 372 n. 3 (Mo.App. E.D. 1993). Voluntary dismissal of a plaintiff's action pursuant to Rule 67.02 is effective on the date it is filed. *Freeman v. Leader Nat. Ins. Co.*, 58 S.W.3d 590, 595 (Mo.App. E.D.2001). Rule 43.02(b) provides that "[t]he filing of pleadings and other papers with the court as required by Rules 41

through 101 shall be made by filing them with the clerk of the court, except that a judge may permit the papers to be filed with the judge, who shall note thereon the filing date and forthwith transmit them to the office of the clerk." Rule 43.02(b). Once the case is dismissed, any further action by the trial court is viewed as a nullity. *Freeman*, 58 S.W.3d at 595. The one-year time period under section 516.230 begins on the date the voluntary dismissal becomes effective, which is the date it is filed. *Kirby v. Gaub*, 75 S.W.3d 916, 918 (Mo.App. S.D.2002) *see also Fuller v. Lynch*, 896 S.W.2d 764, 765 (Mo.App.W.D. 1995).

In this case, because Plaintiff filed the original petition within the five-year statute of limitations and then voluntarily dismissed it without prejudice, she had one year from the date of such dismissal to re-file the action. The dismissal pleading has two circuit clerk file stamps on it: one dated December 14, 1995 and one dated January 22, 1996. The certificate of service states that a copy of the pleading was mailed to Defendants on December 13, 1995. Plaintiff re-filed her petition on January 21, 1997.

The stamp dated December 14, 1995, combined with the certificate of service dated one day earlier, demonstrates that the voluntary dismissal was filed December 14, 1995. Therefore, Plaintiff had one year from that date for its re-filed action to come within section 516.230. Because Plaintiff did not re-file its claim until January 21, 1997, its claim is barred by the statute of limitations. Point denied.

Plaintiff intended the reasoning in the argument made regarding the court's grant of summary judgment in favor of Amrep to extend to the subsequent grants of dismissal as to Defendant Burns. Having already affirmed the trial court's finding on this issue and these facts with respect to Amrep, we also affirm the trial court's dismissal of this claim as to Burns.

Judgment affirmed.

ROBERT G. DOWD, JR., J. and MARY R. RUSSELL, J., concur.